HAFNER et al., Appellants, v. CITY OF ST. LOUIS.

Division One, March 12, 1901.

1. **Court Sitting as Jury:** FORCE OF FINDING. Where the issue of title by adverse possession for ten years is submitted to the court sitting as a jury under proper instructions, its finding of facts on the point will be binding on the appellate court.

2. **St. Louis:** DEED FOR WHARF PURPOSES: PARTICULAR DESIGNATIONS: LIMITATIONS. The city of St. Louis in 1853, under its charter which gave it the power "to hold, purchase and convey such real and personal estate as the purposes of the corporation shall require," had the power to acquire real estate outside of its corporate limits for the purpose of establishing and maintaining a wharf. Nor is this general power limited by another section of the charter which

declares that the city may acquire real estate beyond its corporate limits for designated particular purposes, such as for hospitals, work house, etc., but not designating wharf purposes. The particular designated purposes are not an absolute limitation upon the general power conferred.

3. ——— : ——— : COLLATERAL ATTACK. Neither the grantors in a deed to the city nor their privies nor the city. in a suit in ejectment or by any other collateral proceeding, but only the State, can question the right of the city to acquire real estate outside its limits for wharf purposes, if it be once conceded that the grantors had the right to sell and the city the power to purchase the land.

4. Dry Trust: POWER OF BENEFICIARY TO MAKE DEED: MERGER: RELATION. In pursuance of a marriage contract, the grantor before marriage conveyed land to trustees for the sole and exclusive use and benefit of the woman who afterwards became his wife, with power in them to manage, sell, lease, incumber and dispose of the same as she might in writing direct. After the marriage she and her husband joined in a deed to the city, and later the trustees conveyed· the legal title to her, and she by will devised the land to her husband, and afterwards he conveyed it to plaintiff's ancestor. Held, that, when the trustees executed the trust by reconveying the land to her, the legal and equitable title merged, and the legal title thus acquired by her inured to the city, and by relation her acquisition of the legal title took effect as of the date when she executed the deed to the city, and hence the city by the deed of herself and husband acquired both her legal and equitable title.

Appeal from St. Louis City Circuit Court.—*Hon. Selden P. Spencer, Judge.*

AFFIRMED.

*E. P. Johnson* and *H. M. Pollard* for appellants.

Laws of Missouri 1849, page 67, authorized minor females, over eighteen years of age to execute marriage contracts with the consent of parents while living, and of guardian after their death. The marriage contract

between Mary F. Wright and William H. Glasgow authorized her to will all her property (sec. 3, p. 1567, R. S. 1855), and by it he relinquished all his rights therein, and it deprived him of any interest in or right to possession of lot 299, and vested the legal title to the same, which the statutes of uses did not execute, in William F. Wright and Theodore P. Greene, as trustees of an active trust, and it remained in them until they reconveyed to her in 1854. Schiffman v. Schmidt, 55 S. W. 451; Walton v. Ketchum, 147 Mo. 218; Roberts v. Mosely, 51 Mo. 282; Ewing v. Shanahan, 113 Mo. 188. By the will of Mary F., wife of Wm. H. Glasgow, the latter acquired, in 1857, his first and initial interest in said lot or at the earliest, 1854, when the trustees conveyed to her. The wharf deed of 1853 was merely of the then interest of the respective grantors, a mere quitclaim, and did not undertake to pass an indefeasible estate, and did not operate to transmit either her or his after-acquired legal title thereto, either at common law or under the statute. Gibson v. Chouteau, 39 Mo. 536. The doctrine of relation can not be applied to the wharf deed so as to pass the legal title in the trustees at the time of its execution, and afterwards conveyed by them to her, as that would nullify the marriage contract and pass a legal title then vested in the trustees for her protection. The doctrine of relation is always applied in favor of legal rights and never so as to deprive the legal owner of his estate. Gibson v. Chouteau, 13 Wall. 80 U. S., 101. So that her trustees, then she, and next her husband and his grantees, acquired that title. Kennedy v. Siemers, 120 Mo. 73; St. Louis v. Washington Univ., 88 Mo. 158.

*B. Schnurmacher* and *Chas. Claflin Allen* for respondent.

In 1852, the title to lot 298 was in Thomas A. Wright,

and the title to lot 299 was in Mary F. Glasgow, wife of William H. Glasgow. The property in dispute consists of accretions formed eastwardly of these two lots. Wright and Mrs. Glasgow and husband, joined with many others in the execution of the wharf deed to the city of St. Louis, conveying to it all of their right, title and interest to said lots 298 and 299, east of the line designated in the plat attached to said deed, as the west line of the proposed wharf, for wharf purposes. The deed was a valid conveyance, and thus, even on the theory that the lots were entitled to the accretions, the latter became attached to the wharf and belong, as a part of the wharf, to the city of St. Louis. St. Louis v. Ferry Co., 88 Mo. 615; s. c., 15 Mo. App. 227; St. Louis v. Lumber Co., 98 Mo. 613.

ROBINSON, J.—This is a suit in ejectment for the possession of a piece of land in the city of St. Louis, bounded on the north by the south line of Dock street extended to the Mississippi river; on the west by the eastern line of city block number 661 east of said city, which latter line is the same as a proposed western wharf line under city ordinance number 5403; on the south by a line parallel with and 164 feet south of said south line of Dock street so extended; and on the east by said river, being the eastern portion of lots 298 and 299 of North St. Louis.

The suit as originally instituted was against the city of St. Louis, the St. Louis, Keokuk & Northwestern Railroad Company (which under an ordinance of the city had a right of way across the property in controversy, and over which at the time it was operating a railroad), and Justin E. Joy, a lessee of the city, occupying that part of the property not occupied by the railroad company. The defendants other than the city of St. Louis, answered separately by general denial.

The city answered separately.

First, by general denial.

Second, that plaintiffs and those under whom they claim had not been seized or possessed of the premises within ten years before the commencement of action.

Third, that defendant had been in the continuous adverse possession of them for more than ten years before the action was commenced.

Fourth, that pursuant to ordinance number 2932 of said city, for locating and establishing a wharf north of Cherry street in said city and for other purposes, Thomas H. West and many others, among them William H. Glasgow, Mary F. Glasgow and Thomas A. Wright, the parties under whom the plaintiffs claim title to said premises in this suit, joined in a deed, whereby each for himself forever released and confirmed unto the city of St. Louis his right, title, interest and claim of every description whatever in and to the premises sued for, which deed is known as the "wharf deed of 1853."

Fifth, a plea that all questions relating to the terms, conditions and effect of said deed have been adjudicated in the case of City of St. Louis v. Wiggins Ferry Co., 88 Mo. 615, and that by said decision the status of said deed, and the title of the city to the property thereby conveyed, had become settled and was binding upon plaintiffs.

Sixth, a plea that after the execution of the wharf deed of 1853, the city of St. Louis passed numerous ordinances for the improvement of the wharf established by ordinance 2932, appropriating large sums of money therefor, and that over $3,000,000 was expended in the construction and building of dykes and revetments, and over $35,000 in the improvement of the wharf across the very property in dispute, and that said work was done between the year 1853 and prior to the institution of this suit, during all of which time plaintiffs and their predecessors in the title knew that the city was making

these improvements and expenditures, never objected thereto, but on the contrary acquiesced therein and accepted the benefits of the work done and the money thus expended in improving their property so fronting upon the wharf. That neither the plaintiffs nor their said predecessors attempted, prior to the institution of this suit, to exercise any power or authority over the property in dispute, but permitted the city to do said work and to deal with said property as with the remainder of its unpaved wharf, and that they recognized the same as a wharf by deeds and by other acts in relation thereto; all of which acts are pleaded as an estoppel.

To these answers plaintiffs replied by a general denial, and the case proceeded to trial by the court without the intervention of a jury, during the progress of which plaintiffs dismissed as to the defendant the St. Louis, Keokuk & Northwestern Railroad Company. The court found in favor of the remaining defendants, and against plaintiffs, and plaintiffs have brought the case here on appeal after the usual steps taken to that end.

Since this case was heard in the circuit court, the case of Sweringen v. St. Louis, 151 Mo. 348, passed upon by the other division of this court, has practically determined the question of plaintiffs' paper title to the property.

That was a suit in ejectment for a strip of land just sixty feet north of Dock street in the city of St. Louis, whereas, the property involved in this suit is immediately next and south of said Dock street, both tracts being part of the accretion made to the east of the east boundary line of the Labeaume patent, and the plaintiffs here, as in that case, to sustain their paper title, were required to show that the land embraced in the Labeaume patent (under which these plaintiffs and the plaintiff in that case claimed) was riparian property.

In this case, as in that, it was not claimed that the land

in controversy was embraced within the actual calls of the Labeaume patent, but that it is part of 'an accretion formed to said land, more than a thousand feet east of what was the west bank of the Mississippi river at the time of the concession and patent of the main land acquired by plaintiffs, in each case through mesne conveyance from the original patentee La-beaume. The facts of this case and the facts of the Sweringen case, in so far as concerns the question of paper title, are iden-tical, each depending upon the effect given to the eastern boundary line of the Labeaume grant. If the river is not the eastern boundary line of the Labeaume grant, then the paper title of plaintiff in this case, as in that, must of necessity fall, and if plaintiffs are to recover at all in this action, it must be upon their further claim of title by adverse possession.

On the question as to the eastern boundary of the La-beaume grant, the court, in the Sweringen case, speaking through GANTT, P. J., said:

"Now, in the patent to Labeaume, the river is not men-tioned as a boundary. On the contrary the eastern boundary is a permanent line, fixed by courses and distances, metes and monuments 'between high and low water mark,' and the ac-companying survey exhibits a tract of fourteen acres or more between the eastern boundary of the survey and the river itself," and again, "The tract in this case was confirmed, not only by fixed boundaries other than the river, but the exact number of acres was specified within that survey, and that survey excludes all idea that the United States was granting the fourteen or more acres lying outside of that survey at the time it was made. The survey, moreover, says that Soulard's survey did not describe the meanders of the Mississippi or of Rocky Branch, and it was impossible to determine whether the difference in area was the result of miscalculation of Sou-lard, or by the accretions. But whatever the cause of the dis-

crepancy, the United States confirmed the last survey, which no where calls for the river as a boundary.    And by that patent all these questions must be held to be forever settled."    From the above it must result that the appellant herein, claiming the land in suit as an accretion to part of the Labeaume grant, must fall, unless the holding in that case be ignored by this division.

Appellants' claim of title by adverse possession of the property in suit, for a period of more than ten consecutive years next before defendant's assertion of possession thereto, may be disposed of with the bare suggestion that the facts upon that issue, under proper declarations of law in the nature of instructions to the court, were found adversely to the appellants' contention by the trial court, and by that finding this court will be bound.

But independent of the question, as to the result of this case, if the Sweringen case be followed, and if it be assumed that the property covered by the Labeaume patent was riparian, bounded upon the east by the Mississippi river, and that Labeaume's grantees were entitled to all the land that formed as accretions east of the original boundary line of the river bank to the present bank of the river, the testimony in the case showed that the defendant city of St. Louis had acquired title to this, along with much other property similarly situated on the western bank of the Mississippi river in 1853, for wharf purposes, from plaintiff's grantors, and others by the wharf deed of that date, which deed has been several times before this court for consideration, and in each instance the city's right under it has been sustained, and for like reason the judgment of the trial court herein should be sustained.

To the introduction of this wharf deed, however, two objections were made by appellants, which seem to us to be the principal questions of controversy on this appeal.    While ap-

pellants do not attempt to impeach its validity as a conveyance on the ground that the condition precedent therein had not been complied with by the city (as in the case of St. Louis v. Wiggins Ferry Co., 88 Mo. 615, and for that reason deny that the property therein named had passed to the city), their contention now is, that in so far as the deed covers land beyond the city limits, for wharf purposes, it was inoperative to pass title to the city, for that purpose; and second, that the city got no title to the accretion in front of lot 299 of the property in suit, for the further reason that, at the time of the execution of the wharf deed by Mrs. Mary F. Glasgow and her husband William H. Glasgow (the grantors through whom the appellants now claim the property), the title thereto was in the trustees of Mrs. Glasgow, for her sole and separate use, etc., and for that reason the deed was inoperative to pass her title to the property.

To appellants' first objection, that the wharf deed of 1853 was inoperative to pass title to the city to so much of the land named therein as was beyond the city limits, the respondent answers, first, that the record discloses no such state of facts, but that if it be true that part of the land in suit was shown to have been beyond the limits of the city at the time of the execution of the wharf deed, as claimed by appellants, and if it be further conceded that the city had exceeded the limits of its power in purchasing the land in suit of the appellants' grantor, yet neither they nor the appellants could try that question in a collateral proceeding, as in this, or for that matter, in any character of a proceeding; that the transaction can alone be assailed in a direct proceeding brought by the State. [Land v. Coffman, 50 Mo. 243; A. & P. Ry. Co. v. City of St. Louis, 66 Mo. 251; Hovelman v. Railroad Co., 79 Mo. 639; Conn. Mut. Life Ins. Co. v. Smith, 117 Mo. 289.] That the city of St. Louis has authority to purchase real estate, under proper con-

ditions and for particular purposes, can not be questioned. By section 1 (R. S. 1845) of the act concerning corporations in force when this wharf deed was executed, among its enumerated powers appears the following: "to hold, purchase and convey such real estate as the purposes of the corporation shall require, not exceeding the amount limited by its charter." By the charter of the city upon that subject, then in force it also in express terms provided that, "the city may purchase, receive and hold property, real and personal, beyond its limits, to be used for the burial of the dead, for the establishment of hospitals for the receipt of persons infected with contagious and other diseases, for the establishment of a poorhouse, workhouse, or house of correction, and for the establishment of waterworks to supply its city with water," etc.

Though among the enumerated charter powers of the city, at that time in force, no express power is conferred upon the city of St. Louis to purchase, hold or receive land for wharf purposes beyond its corporate limits, and while it is true that the city, in that regard, must act within the express or implied authorization of its charter, by reading its charter powers in connection with its general authority under the statute, "to hold, purchase and convey such real and personal estate, as the purposes of the corporation shall require, not exceeding the amount limited by its charter," and remembering that no express restriction is found in the city charter against the purchase of real estate for wharf purposes, it would seem that the city, under its general statutory power, could receive and hold such property, beyond its corporate limits, not prohibited by its charter, and essentially necessary for the purpose of carrying out one of its proper corporate functions and duties, as the establishment, construction and maintenance of a general wharf system along its river front,

and by further bearing in mind the fact that in so doing, the beginning or termination of a perfect wharf system must of necessity involve a disregard of the exact corporation limits of the city, as at the particular time established. In our opinion the mere directory power of the charter, as to the right of the city to purchase, hold and receive real estate, outside of the corporate limits of the city, for particular designated purposes, should not be construed as an absolute limitation upon the general power conferred upon the city under section one of the statute concerning corporations above cited, to purchase and hold real estate wherever located, when it becomes necessary for the purposes of the corporation. The necessities of the city, under the statute, constitute ample warrant for the purchase of land wherever located, for other purposes than those designated in its charter. And if it be recognized that the city had power to purchase and the grantors the right to sell the land in controversy, the conveyance would operate to transfer title to the city, and neither the grantors nor those claiming through them, can be heard to complain that the city, improperly or unwisely exercised its power in that respect, to defeat its claim of title. That is a matter that concerns alone the State, and she alone will be heard to complain.

Under exactly the same charter provision as those in force when the wharf deed in question was executed, and with the same general statute applicable to the municipal corporation before it, this court in the case of Chambers v. St. Louis, 29 Mo. 543, when the devise to the city under the famous Mullanphy will was up for consideration, held that the city had the power to acquire, by grant or devise, land outside of its corporate limits for municipal purposes, other than those designated in the charter, and in the same case it was also further announced that even if the city did not have such power, neither the grantor, in such deed, nor their privies could try the ques-

tion in a collateral proceeding; that it was a matter of no concern to them, but a matter solely between the State and the city.

The question that presents itself on appellant's second objection to the wharf deed, under which the city claims title to the property, is just the reverse of the one we.have been considering. This goes not to the right of the city to acquire the land in suit, but to the questions of the power and right of the plaintiffs' grantor (Mrs. Mary F. Glasgow) to convey title to the city, on account of her alleged disability at the time the wharf deed was executed by her and her husband to the city in 1853. From the evidence in this case it appears that in the year 1850, William H. Glasgow and Mary F. Wright (who was at that time the owner of lot 299 in controversy) entered into a marriage contract, whereby all the property of said Mary F. Wright was conveyed to William F. Wright and Theodore P. Green, in trust for her sole and exclusive use and benefit, to manage, sell and lease, incumber and dispose of as the said Mary F. Wright by writing may direct, etc.; that the legal title to the property remained in the trustees until the year 1854, when they reconveyed same to Mrs. Mary F. Glasgow, formerly Mary F. Wright, and she afterwards by will devised and bequeathed same to her husband William H. Glasgow, and. through said William H. Glasgow, plaintiff's paper title to the, property, if title they have, is derived; that in the year 1853, while the said William H. and Mary J. Glasgow were husband and wife, they joined in the execution of the wharf deed of that date, along with a number of other owners of property fronting upon the Mississippi river.

Under these facts it is claimed by appellant, that as the legal title to the land in suit was at the time of the execution of the wharf deed by Mary F. Glasgow and husband in the trustee William F. Wright and Theodore P. Green, and as the wharf deed to the city was a mere release, or deed of quit-claim, it did

not undertake to pass an indefeasible estate to the city, and did not operate, in consequence, to transmit the after-acquired legal title of either Mary F. Glasgow or that of her husband thereto . Whatever may be said as to where the legal title of lot 299 rested after the execution of the deed in 1850 to the trustees Wright and Green, Mary F. Glasgow, under that deed undoubtedly had the equitable title to the lot when she and her husband joined in the execution of the wharf deed to the city to that portion thereof east of the west wharf line, as indicated on the plat accompanying the deed, with the absolute right to manage, use or dispose of same as she might wish, independent of the control or restraint of said trustees. In other words, she was the sole beneficial owner of the property. At most, nothing but a bare naked legal title to the lot was outstanding in the trustees at the time of the execution of the wharf deed in 1853, and subsequently when they in 1854, executed the trust by reconveying the property to Mrs. Glasgow, the legal and equitable title became merged. Not only did the legal title thus acquired by her thus enure to the city, but by relation her re-acquisition of the legal title took effect as of the date when she executed the wharf deed to the city in 1853.

That the trustees, while holding the bare naked legal title to the property in suit in 1853, could not have maintained this action of ejectment for the land against Mrs. Glasgow or her grantees (the city) will not be questioned, and yet if so, why should those claiming through Mrs. Glasgow, after she has parted with her equitable title to the land, and with nothing but the bare legal title of her trustees, reconvey to her, be said to be more favorably situated? Since by the deed from her trustees Mrs. Glasgow acquired no title paramount to that which she conveyed to the city, but subordinate thereto, her after-conveyance of the property by way of will, to her husband, must be and at all times remain subordinate, and since the trus-

tees Wright and Green could not have maintained ejectment against Mrs. Glasgow, or her grantee (the city of St. Louis), for the land in suit, on the bare naked legal title, held by them, the plaintiffs, whose sole claim is through that bare naked legal title, outstanding in the trustees, at the time Mrs. Glasgow and her husband joined in the execution of the wharf deed to the city, for the then equitable interest of Mrs. Glasgow in the property, can not now maintain this action.

Numerous other questions growing out of the case have been discussed by both appellants and respondents in the briefs filed with us, which we do not think necessary to be considered at this time, as under no phase of the case could the judgment be other than that rendered by the trial court for the defendant, and for the further reason that every point made and question raised has been discussed and disposed of by this court in some one or other of the score of cases brought to deprive the defendant city of St. Louis of portions of its wharf property obtained under the wharf deed of 1853. The judgment of the circuit court will be affirmed.

All concur, *Marshall, J.*, not sitting.