In re BIG LAKE DRAINAGE DISTRICT, Appellant, v. B. G. ROLWING.

### In Banc, December 5, 1916.

1. **DRAINAGE DISTRICT: Plan of Reclamation: Modification.** It is competent for the board of supervisors of a drainage district to adopt as a whole the report of the plan of reclamation made by the board of engineers, or to modify it with the consent of the chief engineer.

2. ———: ———: ———: **Correction of Record.** Where the record of the board of supervisors fails to contain a recital of the modification of the plan of reclamation, a correction made above the erased signature of the secretary, and after being so made as to state the action of the board as shown by its minutes and signed by the secretary and president, should not be excluded from evidence, on the gound that no plan of reclamation was ever adopted or filed by the board as required by law.

269 Mo.—11

3. ———: **Inclusion of Extraneous Matter.** A recommendation in the report of the plan of reclamation as made by the board of engineers that certain lands be either condemned for storage basins or not assessed for benefits, and a recital therein that "the board decided to defer this matter until the next meeting," and a recital in the records of the drainage district that at a subsequent meeting the board of supervisors decided the lands should be assessed as other lands and not condemned for storage, did not invalidate the plan of reclamation, and did not authorize the trial court to reject the plan, as being, on this account, not in substantial conformity with the statutory requirements, since the whole matter pertains to the duties of the board of commissioners, and is entirely outside the statutory duties of the engineers and supervisors.

4. ———: **Lands for Right of Way: Condemnation Without Attempted Agreement.** The Drainage Act does not require that it shall be alleged in any petition that an effort has been made to agree with the owner whose land is taken for a right of way, nor does it require that an effort be made to contract with the owner before the filing of a petition for the appointment of commissioners; and the reading of such requirements into the act is not justified by that part of it which prescribes that where lands are taken the proceedings shall follow, "as nearly as possible, the procedure that is now provided by law for the appropriation of land and other property taken for telegraph, telephone and railroad rights of way." This language was not intended to add any conditions not prescribed by the act itself, and, as the act is to be liberally and broadly construed to effectuate its beneficial purposes, a condition that the commissioners must attempt to agree with the land owner upon compensation before his land is taken is not a part of the act.

Appeal from Scott Circuit Court.—*Hon. R. G. Ranney,* Special Judge.

REVERSED AND REMANDED.

*J. L. Fort, Boone & Lee* and *Russell & Joslyn* for appellant.

(1) A strict construction of a statute is a close adherence to the literal interpretation, and a case is excluded from its operation unless the language of the statute includes it, while a statute liberally construed may be extended to include cases clearly within the mischief intended to be remedied, unless such con-

struction does violence to the language used.  Lagler
v. Bye, 85 N. E. 36; Moore v. Company, 164 Mo. App.
165; Priest v. Capitain, 236 Mo. 446; State v. Com-
pany, 87 Pac. 286; Regent v. Company, 112 Mo. App.
271; State v. Taylor, 224 Mo. 455. · Laws relating to
drainage and protection to overflowed lands should not
receive so narrow and restricted construction as courts
give to laws governing the assessment and collection
of revenue.  State v. Bates, 235 Mo. 262.  (2) The plan
of reclamation is sufficient if it sets forth particularly
the facts that the statute requires to be stated therein
if the statute itself is valid.  Drainage Dist. v. Rail-
·roads, 236 Mo. 94; Naum v. District, 113 Mo. App.
575.  (3) The chief engineer must consent to changes
in the plan of reclamation made by the board of su-
pervisors.  He is not required to consent to the rec-
ommendations made by him because he could not rec-
ommend without consenting.  In this case, the engineer
made his recommendation.  The statute does not re-
quire of the board of supervisors to act upon the
recommendations of the engineer.  Laws 1913, p. 237,
sec. 10.  (4) Neither the district nor the landowner is
bound by the recitals in the record of the proceedings
of the board of supervisors, unless those recitals are
true.  The recitals are competent evidence of the facts
recorded, and required by law to be recorded, but not
exclusive.  Paving Co. v. O'Brien, 128 Mo. App. 282.
(5) It is plain that the record of the board of super-
visors may be supplied by parol evidence, and any re-
cital in that record may be shown by parol to be false,
or it may be shown by parol that certain proceedings
were had, which were not put upon the record. Shee-
han v. Hospital, 50 Mo. 155; Lamar v. Lamar, 128 Mo.
188; Houck v. District, 248 Mo. 373.  (6) If no ob-
jections are made by the landowners to the appoint-
ment of commissioners by a disqualified judge until
after the commissioners' report is filed, and evidence
heard upon exceptions thereto, they will be deemed ·to
have waived any objection to the court's jurisdiction.
Drainage Dist. v. Richardson, 237 Mo. 49; State ex

rel. v. Foard, 189 S. W. 71. (7) The action of the
board of supervisors in modifying the plan of reclama-
tion did not injure the exceptor. If the exceptor was
not satisfied with the modification he should have taken
the matter before this court on a writ of *certiorari.*
This is a collateral attack upon the plan of reclama-
tion, and it cannot be made such an irregularity as
the modification aforesaid. State v. Taylor, 224 Mo.
455.

*Haw & Brown, Oliver & Oliver* and *James A. Finch*
for respondent.

(1) A construction upholding the proceedings that ·
were set aside by the judgment of the lower court in
this instance would be more than liberal; it would be
loose construction, leaving out of consideration many
of the positive requirements of the statutes. Drainage
Dist. v. Harris, 184 S. W. 91. The incorporation of a
drainage district by a circuit court is a right con-
ferred upon said court by the statute of the State.
It is a special power conferred upon the circuit court
by the act itself and where a court of general juris-
diction is proceeding in the exercise of special powers,
wholly derived from the statute, and not according
to the course of common law, its jurisdiction must ap-
pear on the record and cannot be presumed, even in a
collateral proceeding. Eaton v. St. Charles County,
76 Mo. 492; St. Louis v. Glasgow, 254 Mo. 262; Ellis
v. Railroad, 51 Mo. 200. (2) No plan for reclamation
was adopted by the board of supervisors, and there-
fore the court was never vested with jurisdiction to
appoint commissioners. (a) The chief engineer of the
district never submitted to the board of supervisors
a plan for reclaiming the lands in the district. This
duty is mandatory and forms the basis of the entire
reclamation structure. Secs. 9, 10 and 26, Laws 1913,
pp. 237-250; Drainage Dist. v. Railroad, 236 Mo. 94;
State ex rel. v. Sheppard, 245 Mo. 50. (b) This "true
and perfect copy of the record of said board" affirma-
tively shows that the board of supervisors never de-

cided and determined upon "the plan for reclamation," but specifically and directly refused to adopt the plan on the 4th day of October, 1913, and deferred the decision of that matter until another meeting. Secs. 10 and 12, Laws 1913, pp. 237-238. (c) An alteration and erasure of a record entirely within the possession and control of the district, apparent on the face of the record, imposed a duty upon the district to satisfactorily explain the alteration to the court before the record was entitled to be admitted in evidence. The court sustained the objection and the district attempted to make the explanation. After a full hearing and examination of the record itself, the court excluded the offering. Such action was not error. Lawson on Presumptive Evidence, Rule 85, p. 389; 7 Am. & Eng. Ency. Law, p. 272-6; Wigmore on Evidence, sec. 2525; Kelly v. Thuey, 143 Mo. 433; Hays v. Bayliss, 82 Mo. 209. The party who produces an altered instrument is generally bound to explain the alteration or erasure, if it is a material point. Jackson v. Osborn, 2 Wend. 555; Chappell v. Spencer, 23 Barb. 584; Tillon v. Ins. Co., 7 Barb. 564; Acker v. Ledyard, 8 Barb. 514. (d) Even if the entry on the record of the board of supervisors, made long after the date of the secretary's certificate to and the filing of the plan for reclamation, had been otherwise competent, it was totally incompetent for the reason that it had never been certified to the clerk as a part of the plan for reclamation, and the commissioners, had they been properly appointed, could not have been guided in appraising rights of way and assessing benefits or damages by this order. (3) In condemnation of the rights of way for ditches inside and outside of said drainage district, the court is now required to follow, as near as possible, the procedure that is now provided for by law for the condemnation for rights of way for telegraph, telephone and railroad purposes. Laws 1913, p. 241, sec. 16, and p. 249, sec. 26. And in proceedings for the condemnation of lands by telegraph, telephone and railroad corporations the

petition must set forth ''the general direction in which it is desired to construct its road, telephone or telegraph line over such lands, and a description of the real estate or other property which the company seeks to acquire, and an averment that the company and the owner were unable to agree upon the compensation to be paid for said right-of-way.'' Secs. 2360, 5513, R. S. 1909; Railroad v. Carter, 85 Mo. 451; Ells v. Railroad, 51 Mo. 203; Railroad v. Young, 96 Mo. 39; Jones v. Zink, 65 Mo. App. 412; Peed v. Barker, 61 Mo. App. 556; St. Louis v. Glasgow, 254 Mo. 262. Supervisors may acquire right of way by purchase. Laws 1913, p. 249, sec. 26. ''The refusal of the owner to relinquish is a jurisdictional fact, in the absence of which even a court of general jurisdiction would be powerless by judgment of condemnation to wrest property from its owner.'' Ells v. Railroad, 51 Mo. 203.

BOND, J.—I. This is the second appeal in this case. The facts presented and the points ruled on in the first appeal are set out in In re Big Lake Drainage District; Marshall et al., Appellants, v. B. C. Rolwing, 265 Mo. 450.

**Statement.**

In that case it was held that the district was validly incorporated and the circuit court of Scott County was possessed of jurisdiction of all further proceedings to be taken in the case and the judgment of the circuit court, purporting to annul the incorporation of said district, was reversed and the cause remanded for further proceedings.

On the second trial it was shown that a board of supervisors was duly elected, which appointed a chief engineer and assistant; that a plan of reclamation was submitted to the board of supervisors, which will be adverted to in the subsequent discussion; that the board of supervisors filed a petition for the appointment of commissioners to appraise the land; that the regular judge of Scott County made an order in vacation appointing commissioners, who made a report of their acts and doings as such, which, together with the

exceptions thereto filed by respondent, was heard by Judge Ranney, who was appointed and called as special judge on account of the disqualification of the regular judge; that on September 3, 1915, the court sustained the exceptions of respondent, B. C. Rolwing, for the reasons alleged in its judgment: first, that no plan of reclamation was ever adopted or filed by the board of supervisors of said Big Lake Drainage District, as required by law, and, second, that the report of the commissioners filed on March 16, 1914, purported to deprive the exceptor and others of their property for the use of the district without due process of law, in that said report sought to condemn their property for rights of way and storage basins without having made an effort to agree with the owners upon the price to be paid for such property and without, after failing to agree, having stated such failure in a petition for the condemnation of such lands; wherefore the court found the issues for the exceptor, B. C. Rolwing, and from this decree the drainage district duly perfected its appeal to this court.

II. Obviously the judgment of the lower court cannot be affirmed if there was a plan of reclamation in substantial conformity to the statutory requirements and if it was not indispensable, that it should appear in the pleadings, that an effort was made to purchase exceptor's property before the commissioners made their report assessing damages and benefits.

**Plan of Reclamation: Modification: Pertinent Matters.**

We shall consider the questions thus presented in order. The present record shows a plan of reclamation reported by the body of engineers which was sufficient under the statute unless invalidated by the following suggestion therein, to-wit: "The report of the board of engineers recommended either condemnation of certain lands for storage, or of non-assessment of these lands for benefits. *After full discussion the*

*board decided to defer this matter until the next meeting."* (Italics ours.) When the plan of reclamation was reported to the board of supervisors, it was competent for that body to adopt it as a whole or to modify it with the consent of the chief engineer. The above quotation appears in the records of the drainage district of date October 4, 1913. The record of the board of supervisors, dated October 6, 1913, shows a report of the chief engineer of his meeting with the board of supervisors on October 4, 1913, when the plan for reclamation was submitted, and that, in certain respects, modifications were agreed upon. Said report concluded, to-wit: "We would further report that we have made these additions and modifications on the maps, profiles, estimates, etc., forming a part of the plan of reclamation and that said modified plan for reclamation is herewith filed. L. T. Berthe, Chief Engineer."

The records of the drainage district show, by date October 20, 1913, that the board of supervisors passed upon the suggestion of the board of engineers above quoted and decided that the lands referred to should be assessed as other lands in the district and not condemned as a storage basin. This entry on the records of the district was objected to for the reason that it appeared to have been written above an erasure of the name of the secretary. The testimony of the president of the board of supervisors was that he was present at the meeting referred to in that record of the proceedings and wrote out the minutes of the meeting himself; that when he looked over the record subsequently he discovered that the clerk had not copied that part of the minutes in the record; that the omitted portion contained an order made at that meeting and that the records of the meeting were not complete until that order was written in; that he thought the correction was made the next day or soon afterwards; that after the correction the name of E. Lindsay Brown, Secretary, was signed, and a blank space left for the signature of the president.

The ruling of the learned circuit judge in excluding this corrected record was erroneous, since there was nothing in the testimony to show that it was occasioned by anything else than the misprision of the secretary of the board of supervisers, Besides the testimony did show that, as finally copied upon the record book, it contained the action of the board of supervisors as manifested by the minutes kept of that particular meeting. Its only utility, however, is to disclose the action taken by the board of supervisors in reference to a suggestion contained in the plan of reclamation. It in nowise impaired or affected the validity of the plan of reclamation as it had been submitted to the board of supervisors and adopted thereafter with modifications consented to by the chief engineer, as disclosed in the records of the district. The suggestion in itself and the order of the board of supervisors rejecting it and consenting to assess the property in question were both outside the statutory duties of these two officials and fell properly within the limits of the duties prescribed for the board of commissioners, whose duty it was to assess damages and benefits.

We therefore hold that the learned circuit judge was in error in ruling, as he seems to have done, that the plan of reclamation in this proceeding was invalidated by reason of the insertion therein of the above quoted advisory clause and the temporary postponement of the consideration of it.

III. Before adverting to the second ground upon which the learned judge rested his conclusion, it is well to call attention to the express language of the statute for the organization of drainage **Condemnation of Lands.** districts by the circuit court, which is now substituted for the repealed portions of the Revised Statutes and acts amendatory thereof, relating to that subject, to-wit: "This act is hereby declared to be remedial in character and purpose and shall be liberally construed by the courts in carrying out this legislative intent and purpose." [Laws 1913, p. 267, sec. 62.] This section was also

referred to in support of the statement of FARIS, J., in In re Mingo Drainage District, 267 Mo. l. c. 278, to-wit: "Courts in this, as in practically every other jurisdiction, have held that such statutes are to be liberally construed."

The plan of reclamation as adopted by the board of supervisors, including the modifications consented to by the chief engineer, was filed with the petition of that body for the appointment of commissioners. This identical plan, except the delayed action of the board of supervisors on the extrinsic suggestion made by the chief engineer above quoted, had been duly filed and certified to the circuit court. The petition thus filed prayed for the appointment of commissioners to appraise the land and the performance of other statutory duties. Such commissioners were subsequently appointed and duly reported their action to the circuit court and respondent, among other grounds, excepted to the damages allowed him in said report. It is, however, insisted by the learned counsel for respondent, among other objections to the petition filed for the appointment of commissioners, that it does not show that the district made an effort to agree with respondent for the sale of the right of way over his land. In support of that contention respondent cites the statute (R. S. 1909, sec. 2360) relating to proceedings to condemn lands by telegraph, telephone and railroad corporations, etc., and the adjudications thereon. The section of the statutes regulating proceedings in the establishment of drainage districts, provides for "following, as nearly as possible, the procedure that is now provided for by law for the appropriation of land and other property taken for telegraph, telephone and railroad rights of way." [Laws 1913, p. 241, sec. 16.] But the Drainage Act does not require that it shall be alleged in any petition that an effort has been made to agree with the owner, nor is there any language in the act requiring an effort to contract with the owner antecedently to the filing of the petition for the appointment of commissioners. On the other hand, the

act relating to condemnation of lands by railroads, etc., does contain a provision requiring such corporations to agree, if possible, upon proper compensation to be paid, before petitioning the circuit court for the condemnation of the land. As the Drainage Act contains no such provision, it is insisted in support of the judgment below, that such a provision should be held to be imported into it by reason of the fact that the above quoted clause provides for a procedure on the part of the *court* entertaining jurisdiction of the drainage proceeding, analogous to the procedure regulating the appropriation of land by railroads and other corporations. We cannot assent to that theory. The fair meaning of this provision is that the trial court might use, on the trial of drainage cases, the procedure, as far as applicable, employed in cases of condemnation by railroads. It was not intended by this mere reference to the procedure in other cases, to add any conditions not prescribed by the statute itself for the establishment and organization of drainage districts. Such a construction of the statute would reach the rigid extreme of importing into it, by mere similarity of procedure with other statutes, a requirement not contained in it. We are not inclined to take that view, for we think it could not be done without violating the statutory command that all the terms and provisions of the Drainage Act shall be construed broadly and liberally to effectuate the wholesome and beneficial motives which prompted its enactment.

Other minor objections are urged to the report of the commissioners which seem not to have been noticed in the judgment of the trial court and which we think are without merit.

Our conclusion is that the judgment sustaining the exceptions of respondent to the report of the commissioners was erroneous. It is, therefore, reversed and the cause remanded for further proceedings not inconsistent with this opinion. All concur.