L. A. RICHARDS and FRANCIS STEELE v. ALVIN T. EARLS, WALTER S. EDWARDS, A. J. SITTNER and JESSE SITTNER, Appellants.—133 S. W. (2d) 381.

Division One, November 3, 1939.

*R. F. Baynes* and *R. P. Smith* for appellants.

262

*R. B. Oliver, III* and *H. C. Riley* for respondents.

*Merrill Spitler* and *Ward & Reeves amici curiae.*

*Edward F. Sharp* and *C. M. Buck amici curiae.*

DALTON, C.—Action to quiet and determine title to certain real estate in New Madrid county. The petition is in usual form under Section 1520, Revised Statutes 1929 (Mo. Stat. Ann., sec. 1520, p. 1682). It alleged that plaintiffs were the owners in fee simple of the lands described; that defendants were in possession and claimed some right, title and interest therein, adverse and prejudicial to plaintiffs. Plaintiffs prayed judgment for title and possession; that defendants be enjoined and estopped from hereafter setting up any claim, right, title or interest. The petition closed with a prayer for general relief. Defendants by answer admitted that they were in possession and claimed title, and denied that plaintiffs were the owners or entitled to possession. The answer than averred that defendant Alvin T. Earls was the owner in fee simple of the lands described; alleged that plaintiffs had attempted to purchase at an execution sale under a judgment for drainage taxes; and then stated that "these defendants hereby offer and tender to plaintiffs all sums paid by plaintiffs or those under whom they claim at such pretended tax sale and these defendants hereby offer to do equity as the court may herein direct." Defendants then prayed the court decree title in defendants. A jury was waived, the cause tried to the court and a decree entered adjudging title and possession to plaintiffs. Motion for new trial was overruled and defendants appealed.

There is little dispute as to the facts. The Himmelberger-Harrison Land and Investment Company (hereinafter referred to as the Investment Company) is the common source of title. Plaintiffs claim title as follows: (1) On August 15, 1927, the Investment Company conveyed by warranty deed to Samuel J. Ault. (2) On the same date Ault executed a deed of trust to Edward J. Bauerle as trustee for the Investment Company. This deed of trust secured the payment of a note for $5330 due ten years after date. The warranty deed was recorded September 28, 1927, and the deed of trust September 16, 1927. (3) On May 22, 1933, the sheriff of New Madrid County executed a drainage tax deed to R. P. Smith. The basis of this deed was a judgment establishing the lien of drainage taxes against the lands in question and rendered in favor of the Little River Drainage District against Samuel J. Ault, Edward J. Bauerle, trustee, and the Investment Company for delinquent drainage taxes for 1928, 1929, and 1930. The defendants in the tax suit were the record owners at the time the suit was instituted and at the time of the sale. All of said defendants were duly served with process; defendant Samuel J. Ault by publication, Edward J. Bauerle, trustee by personal service, and the Investment Company by service upon its secretary, one Clarence Hutson. No objection was raised to the form of the judgment or proceeding upon which it was based. (4) On January 21, 1935, R. P. Smith, the purchaser at the tax sale, and his wife executed a quitclaim deed to the Little River Drain-

~age District. This deed and the tax deed to Smith, were filed for record December 3, 1935. (5) On May 22, 1936, the Little River Drainage District executed a quitclaim deed to plaintiffs L. A. Richards and Francis A. Steele. This deed was recorded June 2, 1936. Each and every one of said deeds is in due form, regular on its face, described the lands in question, and was duly recorded in the land records of New Madrid County, Missouri.

Defendants' claim arises as follows: On September 16, 1927, the said $5330 Ault note, secured by the deed of trust as hereinbefore referred to, was endorsed and delivered by the Investment Company to the Himmelberger-Harrison Lumber Company (hereinafter referred to as Lumber Company). The Lumber Company retained ownership until March 5, 1936. On March 5, 1936, and before the maturity of the note, the Lumber Company transferred the said note to defendant Edwards. Edwards, acted for himself and defendant Earls. They were "jointly interested." Edwards thereafter caused the deed of trust securing the said note to be foreclosed, and on September 12, 1936, S. J. Harris, sheriff, as substitute trustee, under the said Ault deed of trust, executed and delivered a substitute trustee's deed to said lands to defendant Alvin T. Earls. This deed was recorded September 12, 1936.

Other facts appearing in evidence are as follows: At the time process in said suit for delinquent drainage taxes was served upon Mr. Hutson, as secretary of the Investment Company, Mr. Hutson was also secretary of the Lumber Company. The Lumber Company was then the owner and holder of said note by assignment from the Investment Company. On December 31, 1931, prior thereto, the Lumber Company had charged said note off to profit and loss. The Lumber Company, after knowledge of the institution on October 6, 1932, of said suit for delinquent drainage taxes, decided not to protect the said land.

The said drainage tax suit was instituted and prosecuted to judgment by R. P. Smith as tax attorney for the Little River Drainage District (hereinafter referred to as the district). At the sale under said drainage tax judgment he purchased the said real estate for the drainage district and at the personal direction of the secretary of the district. The records of the district, however, showed no authority given by the board of supervisors or any action taken by them with reference to said purchase, but it was the regular practice of the tax attorney to bid in all lands for drainage taxes, where there were no other bids. The tax deed, as executed by the sheriff, was made directly to Smith. The price of $25 paid for this 160 acres of land at the tax sale was not unusual or out of line for tax sales in 1933. Except for 10-12 acres, "it was wild land." There was evidence, however, that the land should have been worth around $4 or $5 per acre and was very productive. Mr. Smith did not pay the considera-

tion. It was paid by the district and Smith held title for the district. At the time the tax suit was instituted against the record owners of the land, the district and its officers and its tax attorney had no knowledge or information concerning the transfer of the note in question to the Lumber Company. No record of the assignment of this note appeared in the land records.

Defendant Edwards paid the Lumber Company $100 for the $5330 Ault note on March 5, 1936. At that time the note showed total credits of $39.48, being amounts paid on interest during 1929. Before Edwards purchased the Ault note, he was entirely familiar with all transactions appearing of record with reference to this land, including the said tax proceedings. He had previously communicated with the secretary of the drainage district and had been advised that the district claimed to own this land. After the note was purchased an additional expense of $26.36 was incurred in foreclosing the deed of trust. There was evidence that the plaintiffs knew that Earls had purchased the Ault note from the Lumber Company before they obtained their deed from the drainage district.

On November 13, 1935, and after R. P. Smith ceased to be attorney for the Little River Drainage District, and after the execution of his deed to the district, but before it was recorded, the said district, by R. B. Oliver III, as tax attorney, instituted a second suit for delinquent drainage taxes on this land, and for the 1930, 1932 and 1934 taxes. The suit was instituted against the same parties named as defendants in the first suit. They still appeared as the record owners of the land. After defendant Edwards acquired the Ault note, as hereinbefore referred to, Earls went into possession of the land. On March 16, 1936, Earls paid off the delinquent drainage taxes covered by this second tax suit, and said suit was dismissed. The purchase of the Ault note from the Lumber Company, and the payment of the taxes covered by the second suit, was subsequent, however, to the recording of the said tax deed to Smith and of Smith's deed to the drainage district, both being recorded December 3, 1935.

Appellants in their brief refer to this proceeding as one in equity. Certain amici curiae have also briefed this cause on the theory that this action is essentially one by defendants (appellants) as inferior lien holders to redeem this real estate from the grantees of purchasers at a tax sale or foreclosure of a superior lien, when they (appellants' assignors) were not parties to the foreclosure proceeding of the superior lien and that they are not bound thereby. It becomes important therefore to determine whether this action is at law or in equity. Whether the action is one at law or in equity must be determined according to the issues tendered by the pleadings. [Rains v. Moulder, 338 Mo. 275, 90 S. W. (2d) 81, 84; Jacobs v. Waldron, 317 Mo. 1133, 1137, 298 S. W. 773, 774, citing cases. Ebbs v. Nebb, 325 Mo. 1182, 1191, 30 S. W. (2d) 616, 620.] A deter-

mination of whether the cause is legal or equitable is essential to determine (1) whether the cause was triable before a jury in the court below and, (2) as to what method of review must be employed here. If the pleadings present issues of equitable cognizance, then the cause is in equity. The action is one at law since both the plaintiffs and the defendants seek the establishment of purely legal rights, to-wit, a judgment for fee simple title and possession. [Williams v. Walker, 333 Mo. 322, 62 S. W. (2d) 840, 842, citing cases. Becht v. Johnson, 333 Mo. 420, 62 S. W. (2d) 847, 849.] The petition states no grounds for affirmative equitable relief. The answer states no facts calling for equitable relief and there is no prayer for affirmative equitable relief. The sole issue made by the pleadings is one at law as to the legal title in fee simple and the right to possession. The prayer for injunction and general relief at the close of plaintiffs' petition, standing alone, is insufficient to convert the case to one in equity, because the petition fails to state a cause of action in equity. The demand for relief is no part of the cause of action. [Rains v. Moulder, supra; Koehler v. Rowland, 275 Mo. 573, 581-582, 205 S. W. 217, 218, 9 A. L. R. 107; Jacobs v. Waldron, supra; Peterson v. Larson, 285 Mo. 119, 125, 225 S. W. 704, 705.] The answer does not state a cause of action in equity. The mere statement in the answer that plaintiffs had purchased at a ''pretended tax sale,'' and that ''defendants hereby offer to do equity as the court may herein direct,'' did not make the cause of action or defense one in equity, and constituted no basis for affirmative equitable relief based upon an equitable defense. Even the statement in the answer of an equitable defense or evidence in support thereof would not convert a proceeding at law into one in equity. [Turner v. Hine, 297 Mo. 153, 160, 248 S. W. 933, 935; Electric Ry. Co. v. Curtis, 154 Mo. 10, 20, 55 S. W. 222.] The action was therefore one at law. The record shows that a jury was waived and the cause submitted to the court. No declarations of law were requested or given. Absent errors in the trial, therefore, the finding of the court if based on substantial evidence is conclusive on us.

■ Appellants assign error in the admission in evidence of (1) the tax deed of R. P. Smith, (2) the deed from Smith to the drainage district, and (3) the deed of the drainage district to respondents (plaintiffs below). The first deed was objected to on the following grounds: (1) that the proceedings in the tax suit were such that it failed to convey the interest under the deed of trust; (2) that the purchase at the tax sale was by the drainage district and that title was illegally and falsely taken in the name of R. P. Smith for the benefit of the district; (3) that the consideration for the tax deed was so negligible as to shock the conscience of the court. The other two deeds were objected to on the theory that the grantors therein had no title and conveyed no title and that the district had no power to

acquire the land; that the land was not acquired for the purposes of the district; and that buying and selling land was entirely beyond the powers of the Little River Drainage District.

The several instruments were properly admitted in evidence. Under the issues made by the pleadings they constituted evidence of plaintiffs' chain of title. Each deed was regular on its face and therefore prima facie admissible, as against the objections made by appellants. [Sec. 10765, R. S. 1929 (Mo. Stat. Ann., sec. 10765; p. 3493); Sec. 1715, R. S. 1929 (Mo. Stat. Ann., sec. 1715, p. 3990); Travelers' Insurance Co. v. Beagles, 333 Mo. 568, 62 S. W. (2d) 800.] The matters complained of by appellants did not appear from the face of the instruments. They were affirmative defensive matters not pleaded and requiring independent affirmative proof. The assignment is overruled.

Appellants next assign error in the admission of testimony as to the actual knowledge of the Lumber Company as to the pendency of the first tax suit. The record shows that this information first appeared as follows: ''Q. Mr. Hutson, was the Himmelberger-Harrison Land and Investment Company served a summons in tax suit No. 9245, entitled Little River Drainage District v. Sam J. Ault?

''MR. BAYNES: That is objected to, the return is the best evidence.

''The COURT: That is true however, I will let him answer.

''MR. BAYNES: Exception.

''A. Yes sir; The Himmelberger-Harrison Lumber Company had actual knowledge of the fact that a tax suit had been filed on this property; it is a part of my duties as secretary of the Himmelberger-Harrison Lumber Company to make a record of the tax sales in which the company is interested.''

It is apparent that the information given in the answer was not called for by the question objected to and was merely additional information voluntarily given by the witness. No motion was made to strike out the voluntary statement of the witness. No objection or exception was saved to the answer of the witness as made. The assignment is overruled. [Cazzell v. Schofield, 319 Mo. 1169, 8 S. W. (2d) 580, 589; State ex rel. Friedman v. Purcell, 131 Mo. 312, 319, 33 S. W. 13.]

Appellants further assign error in the admission of the testimony of witness Hutson as to acts, conversation, and private transactions within the Lumber Company, concerning protection or abandonment of the lands in controversy. This assignment was abandoned by appellants. The particular testimony is not pointed out. The grounds of objection are not specified. No effort was made to show how appellant was prejudiced by the admission of the testimony. The matter is not mentioned under points and authorities or in argument, and no authorities are submitted in support of the assignment.

The assignment is overruled. [Span v. Jackson-Walker Coal & Mining Co., 322 Mo. 158, 16 S. W. (2d) 190, 202.]

■ The final assignments of error are that the court erred (1) in finding respondents were the owners of the land, and (2) in finding that appellants were not the owners of the land in question.

Under these assignments of error appellants in their brief urge (1) estoppel, (2) invalidity of the tax deed, and (3) that appellants' rights were not foreclosed by the tax proceeding.

Appellants contend that respondents are estopped by the acts of the drainage district to assert the validity of the tax title (1) because the district subsequent to said tax sale sued the former owners for delinquent drainage taxes and alleged in said suit that said former owners still owned said lands, and (2) because in reliance on said suit appellants bought the note from the Lumber Company and paid the taxes covered by the second suit.

Estoppel was not an issue in this cause. The issues in a lawsuit are made up by the pleadings. [Kleinlein v. Foskin, 321 Mo. 887, 13 S. W. (2d) 648, 654; Moore v. Dawson, 220 Mo. App. 791, 277 S. W. 58, 61; Frank v. Myers (Mo. App.), 109 S. W. (2d) 54, 57.]

Estoppel is an affirmative defense to be pleaded and proven, unless such facts appear from plaintiffs' case. [State ex rel. School District v. Haid, 328 Mo. 729, 41 S. W. (2d) 806, 809; Ambruster v. Ambruster, 326 Mo. 51, 31 S. W. (2d) 28, 35, 38; Grafeman Dairy Co. v. Bank, 315 Mo. 849, 870, 288 S. W. 359, 363, 368; Missouri Cattle Loan Co. v. Insurance Co., 330 Mo. 988, 52 S. W. (2d) 1, 11.]

Appellants contend that evidence sufficient to create an estoppel came in without objection. We think the evidence was insufficient for that purpose. The evidence in this case discloses that at the time the delinquent taxes covered by the second tax suit were paid on March 16, 1936, the tax deed to Smith, and the quitclaim deed from Smith to the district, had been of record since December 3, 1935. Before Edwards bought the note, or Earls paid the taxes, Edwards had contacted the secretary of the drainage district and had been advised that the district owned the real estate and would sell it. Edwards was present when Earls paid off the taxes covered by this second tax suit. Edwards admitted that he did not know of the filing of the second tax suit (filed November 13, 1935) at the time he purchased the note on March 5, 1936, but he did know of the tax sale and the deeds thereunder. It is therefore apparent that appellants did not rely on the statements in the second tax suit when they paid the taxes. We are of the opinion that the pleadings are not sufficient to raise an issue of estoppel and the evidence fails to establish the necessary elements of estoppel. [Blodgett v. Perry, 97 Mo. 263, 10 S. W. 891; 892; Rosencranz v. Swofford Bros. Dry Goods Co., 175 Mo. 518, 75 S. W. 445; Waugh v. Williams, 342 Mo. 903, 119

S. W. (2d) 223, 226; Rhoads v. Rhoads, 342 Mo. 934, 119 S. W. 247, 252; Burke v. Adams, 80 Mo. 504, 50 Am. Rep. 510; State ex rel. Richards v. Fidelity & Casualty Co. (Mo. App.), 82 S. W. (2d) 123, 128.]

Appellants next urge that the execution sale under the tax judgment and the deed thereunder was invalid and the district acquired no title because the statute which alone gave the district power to buy at tax sales was not strictly complied with. Appellants contend that the deed was void and not merely voidable, and the several conveyances passed no title.

Section 10766, Revised Statutes 1929 (Mo. Stat. Ann., sec. 10766, p. 3494) among other things provides: "To protect said lien of said drainage taxes . . . in any case where delinquent lands are offered for sale . . . the board of supervisors shall have authority to bid or cause to be bid, not to exceed the whole amount due thereon, as aforesaid, in the name of the district, and in case such bid is the highest bid, the sheriff shall sell and convey such lands to such drainage district . . ."

Section 11020, Revised Statutes 1929 (Mo. Stat. Ann., sec. 11020, p. 3659) among other things provides: "Drainage or levee districts . . . incorporated under any of the drainage or levee laws of this state where lands are offered for sale for their own taxes or assessments due thereon, shall be and are hereby authorized to buy such lands. . . . If such bid is the highest bid, the sheriff shall convey such lands to such drainage district. . . ."

Section 10768, Revised Statutes 1929 (Mo. Stat. Ann., sec. 10768, p. 3496) among other things provides: "In order to effect the drainage, protection and reclamation . . . the board of supervisors is authorized . . . to hold, control and acquire by donation or purchase, and if need be, condemn any land . . . for any of the purposes herein provided, or for material to be used. . . ."

All terms and provisions of the drainage act are to be broadly and liberally construed. [Sec. 10808, R. S. 1929 (Mo. Stat. Ann., sec. 10808, p. 3530); Walker v. Sundermeyer, 271 Mo. 579, 585, 197 S. W. 102, 103; In re Drainage District v. Rolwing, 269 Mo. 161, 169, 190 S. W. 261, 263.] Appellants contend that no title passed by the tax deed since, according to their evidence, the district bought at the tax sale but the deed was made to R. P. Smith. Mr. Smith, one of the attorneys for appellants, and a witness on their behalf testified: "I bid in the land as tax attorney for the Little River Drainage District, at the personal direction of B. F. Burns, Secretary of the District. . . . I asked Mr. Burns how he wanted the deed made and he told me in my name. . . . I gave a check for all those bids in my name. . . . The consideration was paid by the Little River and I held it solely for them." However, the interest of the district in the matter did not appear on the records of the district or in the

deeds. Prima facie Smith had the right to take legal title. At least he had the legal capacity prima facie to be a grantee in the deed. If he purchased for or at the direction of the district, and if the district furnished the consideration, then the district was the equitable owner, and if Smith subsequently conveyed to the district by proper deed, the equitable and legal title merged in the district. If the district purchased at the tax sale it ultimately received the legal title and had the legal title before appellants purchased the Ault note, paid the drainage taxes under the second tax suit, or forclosed the Ault deed of trust. There was no testimony as to the express purpose for which the lands were acquired, except as might be inferred from the testimony of Mr. Smith that it was, "the policy of the Drainage District that Mr. Burns and myself would see to it that the land wouldn't go without bids; if there were no other bids the land was marked off to me." As far as the issues of this suit are concerned we think that the conveyances in evidence were sufficient for the district to acquire and pass the legal title to the lands in question to respondents. The district had authority to acquire and convey real estate for certain purposes and appellants may not collaterally question the right of the district to take and transfer title in this case. Only the state could complain. [Hafner v. St. Louis, 161 Mo. 34, 43-45, 61 S. W. 632; Land v. Coffman, 50 Mo. 243, 254.] In the absence of specific pleading and proof that the real estate was unlawfully acquired by the district we must presume that it was lawfully acquired for lawful purposes of the district.

Appellants finally contend that the first tax suit failed to foreclose the rights of the Lumber Company since the Lumber Company, as assignees and owners of the Ault note secured by the said deed of trust, was not a party defendant in said tax sale proceeding; and that appellants, as subsequent assignees of the note, and as purchasers under the foreclosure of the deed of trust, are not affected by the sale for taxes. Appellants insist that the sale transferred only the rights of the parties named as defendants in the tax suit.

However, if a lien holder is not made a party to a proceeding to foreclose a superior tax lien and not otherwise bound by the foreclosing proceeding, his remedy is by a proceeding in equity to redeem. No such issue is raised by the pleadings.

We have seen that this action is one at law and that the answer of appellants did not state facts showing any equitable rights in appellants. Appellants did not claim an equitable right of redemption in the property, but the legal title thereto. There was no prayer for redemption or for affirmative equitable relief. No direct assault was made upon any deed or proceeding. The sole issue presented by the pleadings was as to which party had the better legal title. The motion for a new trial alleges no error in not allowing appellants to redeem. It states that the court erred in deciding this cause in favor

of respondents, when his decision should have been in favor of appellants. The same assignments of error are made here to-wit: That the court erred in holding that respondents are the owners of the land and in not holding that appellants are the owners. Under points and authorities and in argument appellants point out that respondents hold under the tax title, and contend that since at the time the tax suit was instituted the Lumber Company owned the note and "was not made a party to the tax suit nor served with process makes it impossible for them to be affected." Again, appellants say: "The tax suit was invalid because the actual owner of the deed of trust under which appellants now hold, was not made a party to that suit." This does not suggest a claim of a right of appellants in equity as the holders of an alleged inferior lien to redeem property sold under the foreclosure of a superior lien and to which foreclosure proceedings of the superior lien the appellants and their grantors were not parties. Rather it suggests that the tax proceeding was wholly void and may be disregarded. [Spore v. Land Co., 186 Mo. 656, 85 S. W. 556.] If it be conceded that the Lumber Company was not a party to the proceeding for the foreclosure of the drainage tax lien, or not otherwise bound by said proceeding (which we do not hold), still, since the tax lien was superior to the lien of the deed of trust, and the legal title of Ault was foreclosed and sold, one could not say that the sale was invalid and the rights of the Lumber Company and its assigns would not be affected, because in that case their right would be one of redemption. In case of foreclosure of the inferior lien the purchaser thereunder would hold subject to the rights of purchasers under foreclosure of the superior lien. [City of Springfield v. Ransdell, 305 Mo. 43, 264 S. W. 771, 773.] The cause was tried below and is presented here upon the sole proposition as to whether appellants or respondents have the better legal title to the real estate in question. We may not go outside the evidence and the pleadings and make findings and grant relief not responsive to any issue in the case. [Rains v. Moulder, supra, citing cases.]

The question, therefore, is: Did respondents, who hold under the purchaser at the tax sale, acquire a better legal title than appellants who purchased at the foreclosure of the deed of trust? By Section 10764, Revised Statutes 1929 (Mo. Stat. Ann., sec. 10764, p. 3491), the lien of drainage taxes is a paramount lien, subject only to the lien of the State for general State, county, school and road taxes. There is no claim that the lien of drainage taxes was not superior to the lien of the deed of trust or that the District did not proceed properly to foreclose its tax lien against the land as to Ault and the Investment Company, or that the proceeding is not regular on its face. [Sec. 10765, R. S. 1929 (Mo. Stat. Ann., sec. 10765, p. 3493); Sec. 9953, R. S. 1929 (Mo. Stat. Ann., sec. 9953, p. 7995).] Appellants contend that an action to enforce a tax lien, prosecuted "against the

owner of the property, if known, and if not known, then against the last owner of record as shown by the county or city records at the time the suit was brought'' does not affect unknown assignees of notes secured by deeds of trust of record. [See Sec. 10765, R. S. 1929 (Mo. Stat. Ann., sec. 10765, p. 3493, and Sec. 9953, R. S. 1929 (Mo. Stat. Ann., sec. 9953, p. 7995); Morgan v. Willman, 318 Mo. 151, 168, 1 S. W. (2d) 193, 200.] However, the sale under the judgment for drainage taxes conveyed the legal title in the lands in question to respondents subject to appellants' rights. [Little River Drainage District v. Sheppard, 320 Mo. 341, 7 S. W. (2d) 1013, 1014.] In the case of Stafford v. Fizer, 82 Mo. 393, 397, the court in dealing with the rights of a purchaser under a proceeding for the foreclosure of a tax lien as against a purchaser under a deed of trust said: ''It will be observed that we are dealing with two liens, one created by law in favor of the State which necessarily takes precedence of other prior, as well as subsequent liens, on account of its peculiar character; . . . the other in favor of creditors, created by the act of the debtor. These two liens have been foreclosed and the purchasers stand opposed to each other with deeds under the proceedings respectively employed for enforcing them. The lien of the State is the superior one, although subsequent in time. . . .'' The court then held that the purchaser at the sale under foreclosure of the superior lien had the superior title at law. [See also Gitchell v. Kreidler, 84 Mo. 472; Myers v. Bassett, 84 Mo. 479; Cowell v. Gray, 85 Mo. 169; Allen v. McCabe, 93 Mo. 138, 6 S. W. 62.]

It is therefore immaterial to any issues in this case whether a subsequent and ''unknown assignee'' and owner of a note is bound by a tax judgment against the payee of the note named in the deed of trust where suit is instituted subsequent to the transfer of the note, since no issue as to the right of the assignee to redeem is presented. Repondents have the better legal title. Finding no error in the record the judgment is affirmed. *Hyde* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.