M. JACOBS, Appellant, v. ROBERT WALDRON.—298 S. W. 773.

Division One, September 16, 1927.

**1. QUIETING TITLE: Relief.** In the trial of a cause to determine title to real estate, the court may finally determine the rights of the parties

and award full relief, whether legal or equitable, if the same is asked for in the pleadings of either party.

2. **QUIETING TITLE: Equitable Defense: Pleading: Affirmative Relief.** An action to ascertain and determine title is at law or in equity according to the issues tendered by the pleadings. But to convert an action at law into a suit in equity, it is not sufficient to plead an equitable defense, but there must be a prayer for affirmative relief based on such defense.

3. ———: ———: ———: ———: **General Relief: Cancellation.** In an action at law, where plaintiff has a clear record title, if the answer does not ask that plaintiff's deed be cancelled and contains no special prayer for affirmative relief, a prayer for general relief does not convert the action into a suit in equity.

4. ———: **Tax Sale: Redemption: No Tender.** There being no demand upon the Auditor of Kansas City to furnish a statement setting forth the amount of money necessary to redeem the lots which had been sold for taxes, and no demand or request that the City Treasurer issue a redemption certificate, and all the agent of the defaulting taxpayer did was to confer with some official in the Auditor's office who told him the five years had expired and it was too late to redeem the land under the charter, the deed received by the purchaser at the tax sale cannot be cancelled, in an action at law brought by such purchaser to quiet title, which the taxpayer's answer does not convert into a suit in equity.

Corpus Juris-Cyc. References: Actions, 1 C. J., Section 177, p. 1049, n. 34; Section 183, p. 1053, n. 93. Evidence, 22 C. J., Section 70, p. 137, n. 82; p. 141, n. 63. Taxation, 37 Cyc., p. 1518, n. 66.

Appeal from Jackson Circuit Court.—*Hon. Thad B. Landon*, Judge.

REVERSED AND REMANDED (*with directions*).

*Roland Hughes* for appellant.

(1) The right to redeem from a tax sale is purely statutory, and must be exercised within the time and in the manner provided by statute. 37 Cyc. 1381; Lincoln v. Ry. Co., 75 Neb. 523; Carley v. Bonner, 70 Neb. 674; Logan County v. McKinley, 70 Neb. 406; Stogsdell v. Evans, 53 Mo. App. 663. (2) If the owner of land has failed to exercise his right of redemption within the statutory period, a bill in equity will not lie to effect a redemption unless expressly authorized by statute, or unless there are in the case such circumstances of fraud, accident or mistake, as to bring it under a recognized head of equity jurisdiction. 37 Cyc. 1419; Craig v. Flannigan, 21 Ark. 319; Gladwin v. French, 112 Mass. 186; Culver v. Watson, 28 N. J. Eq. 548; Kahn v. Thorp, 43 Wash. 463; Converse v. Brown, 200 Ill. 166; Clark v. Lancy, 178 Mass. 460; Weidersum v. Bender, 172 Mass. 436. (3) The court erred in treating defendant's amended answer as a bill in equity to redeem under the charter. It contains none of

the elements of a bill in equity. There was no allegation or proof of any facts giving an equitable right to redeem. The only proof was of the deposit with the clerk. (4) Sec. 43, Art. V, of the Charter is a "short statute of limitation" and does not extend the period of time in which the owner of lot has a right to redeem; but limits the time in which he may bring an action upon some equitable ground to set aside the sale and tax deed, after the filing of the tax deed for record. Bird v. Sellers, 122 Mo. 32; Allen v. White, 98 Mo. 55; Callahan v. Davis, 90 Mo. 78, 125 Mo. 36; Hill v. Atterbury, 88 Mo. 114; Mason v. Crowder, 85 Mo. 526; Merriweather v. Overly, 228 Mo. 233.

*G. W. Stubbs* and *C. A. Capron* for respondent.

(1) The object of this statute (Sec. 1970, R. S. 1919) is to give a right of action to any person claiming an estate in lands, and permit a defendant to set up as many defenses as he may have. Talbert v. Grist, 198 Mo. App. 499. (2) If the issues joined entitled the parties to an ordinary judgment at law the cause of action may be submitted to a jury, but if the issues are equitable the cause is triable by the court. Lee v. Conran, 213 Mo. 404; Hauser v. Murray, 256 Mo. 84; Toler v. Edwards, 249 Mo. 159. (3) Prior to the amendment of 1909 the court was to ascertain, define and adjudge the title, interest and estate of the parties severally, but now the courts can give full relief. Powell v. Crow, 204 Mo. 481. (4) It is the duty of the court in an action under this statute to ascertain and determine the estate, title and interest of the parties to the suit and to render a judgment accordingly. Richards v. Mining Co., 221 Mo. 149. (5) In an action under this section, which is tried by the court without a jury and without instructions, the finding of fact by the court, if supported by any evidence, is conclusive on appeal. Dowd v. Bond, 199 S. W. 954. (6) It was the duty of the City Auditor upon the application of the respondent through his attorney to furnish him a statement setting forth the amount required to redeem the property, and the duty of the City Treasurer upon the offer to redeem to accept the amount and to issue a certificate of redemption from the tax sale. Sec. 7724, R. S. 1919; Sec. 35, Art. V, Charter of Kansas City 1909. (7) To defeat the tax deed and sustain the respondent's title to his property it was only necessary to show an offer to redeem prior to the issuance of the tax deed. Sec. 7733, R. S. 1919; Sec. 41, Art. V, Charter.

GANTT, J.—This is a suit to ascertain and determine the title to lots 17 and 18 in Block 6 in Oakland Addition to Kansas City.

The court found defendant Robert Waldron to be the owner of the lots in fee simple, canceled the tax deed conveying to plaintiff the lots, ordered the circuit clerk to pay to plaintiff the money deposited with the clerk by defendant Waldron to repay plaintiff for money expended in purchasing the lots, together with interest and penalties, and decreed the title quieted in defendant Robert Waldron, and against plaintiff, M. Jacobs, and any and all persons holding by, through or under him. Plaintiff appealed.

The petition is in the usual form. The answer of defendants Clark and Wilson is as follows:

"Come now the above-named defendants, A. M. Clark and John T. Wilson, and state to the court that they do not have sufficient knowledge of this matter with which to form an answer and ask that the plaintiff be put on strict proof herein. Wherefore, having fully answered ask to be discharged with their costs."

Defendant Steiner made default.

The amended answer of defendant Robert Waldron is as follows:

"Comes now the above-named Robert Waldron, one of the above-named defendants, and for his amended answer, leave of court having first been had, and in behalf of all of the defendants, denies each and every allegation in plaintiff's said petition contained, and further answering, and by way of affirmative relief, states that said Robert Waldron is the owner of lots 17 and 18, Block 6, Oakland, an addition to Kansas City, Jackson County, Missouri, and has been the owner under a warranty deed made and properly filed since the 28th day of March, 1908, and in continuous possession thereof.

"This defendant further says that on the 6th day of December, 1921, the city of Kansas City, Missouri, issued a tax deed to this plaintiff, which said deed was duly recorded on December 31, 1921, and recorded in Book B. 1478, on page 595.

"This defendant further states that prior to the issuing of said tax deed, and on or about December 1, 1921, he tendered to the City Treasurer of Kansas City, Missouri, the amount due thereunder with all interest and penalties, as provided by statute, and demanded a redemption certificate for said above-described property for taxes of 1916, but that said redemption certificate was refused.

"This defendant further says that within three years from the date of the recording of said tax deed he has deposited with the Clerk of the Circuit Court of Jackson County, Missouri, at Kansas City, a sum sufficient to repay the holder of said tax deed, together with all interest and penalties, or those claiming under or through him, and that said redemption was had, or attempted to be had, for the use and benefit of this defendant, who is the owner and in possession of the above-described property.

"Wherefore, this defendant prays the court will determine, ascertain and try the interest, estate and title of the said plaintiff and de-

fendants of, to and in the said real estate heretofore described, and by its decree to adjudge and determine the title to said property and to define the rights, title and estate of plaintiff and defendants in and to said above-described real property; and if the court finds that this defendant is the owner of said property above described, then an order and decree be entered of record forever barring the said plaintiff, or those holding through, by or under him, as well as all other persons who may or might claim through or under this plaintiff, from hereafter setting up or claiming any right, title or interest to the above-described property, and for such other and further relief as to the court may seem meet and just.''

The reply was in effect a general denial.

Defendants Clark, Wilson and Steiner make no claim to the land. The ownership of the lots is to be determined as between appellant Jacobs and respondent Waldron. Appellant Jacobs claims ownership by virtue of a tax deed, executed and delivered to him by Kansas City through its city treasurer on the 6th of December, 1921, and filed for record on the 13th of December, 1921. Respondent Waldron claims ownership by virtue of a warranty deed of the 28th of March, 1908, and argues the tax deed should be canceled, for the reason that (as alleged in his answer) ''prior to the issuing of the tax deed and on or about December 1, 1921, he tendered to the City Treasurer of Kansas City the amount due thereunder with all interest and penalties, as provided by statute, and demanded a redemption certificate for said-above-described property for taxes for 1916, but that said redemption was refused;'' and for the further reason that he deposited with the circuit clerk a sum of money sufficient to repay appellant for the money paid at the tax sale for the lots, together with all interest and penalties.

In Section 1970, Revised Statutes 1919, it is provided that upon trial of a cause to determine title *if the same be asked for in the pleadings of either party,* the court may finally determine the rights of the parties and award full relief, whether legal or equitable. In addition, we have ruled that the action is at law or in equity according to the issues tendered by the pleadings. [Lee v. Conran, 213 Mo. l. c. 411, 111 S. W. 1151; Williamson v. Frazee, 294 Mo. l. c. 329, 242 S. W. 958; Thompson v. Stilwell, 253 Mo. l. c. 94, 161 S. W. 681; Strother v. Kansas City, 283 Mo. l. c. 283, 223 S. W. 419; Schneider v. Schneider, 284 Mo. l. c. 322, 224 S. W. 1; Barron v. Store Co., 292 Mo. l. c. 211, 237 S. W. 786; Stewart v. Stewart, 262 S. W. 1016; Sorrell v. Bradshaw, 222 S. W. 1026; Hayes v. McLaughlin, 217 S. W. l. c. 264.]

It isn't sufficient to plead an equitable defense, but there must be a prayer for affirmative relief, based on such defense before the action is converted into one in equity. [Citizens Trust Co. v. Going, 288 Mo. l. c. 511, and cases cited, 232 S. W. 996.]

In the instant case the answer contains no special prayer for relief. The court is not asked to cancel the deed. However, there is a prayer for general relief. The writer is of the opinion that a prayer for general relief is not sufficient in this case to convert the case into an action in equity. [1 Whitehouse, Equity Practice, p. 220; Koehler v. Rowland, 275 Mo. 1. c. 581, 582.] But assuming that the case is an action in equity, we will proceed to consider the only evidence in support of the allegation that a tender was made to the City Treasurer, which is as follows:

- "My name is C. A. Capron. I represented Mr. Waldron and the other defendants in this action along the latter part of November, 1921.

"Mr. Young: If the court please—

"Mr. Capron (continuing): It was a day or two days before Thanksgiving and Mr. Waldron talked to me about the taxes unpaid on that property.

"Mr. Young: If the court please, I want to make an objection.

"Q. (continuing): As the day—

"The Court (interrupting): Wait a minute, Mr. Capron.

"Mr. Young: I want to object to his testifying to anything prior to the filing of this suit unless agency is first proven. He can't prove agency by himself.

"The Court: Well, that is true, but I can't tell very well until I see what he testifies to.

"Mr. Capron: I am testifying now because Mr. Waldron isn't here and I am hastening the time.

"Mr. Young: He is testifying to a matter that happened prior to the issuing of this tax deed.

"The Court: Well, I don't know what he is going to say, whether it would be competent or not. Go ahead and let us see.

"To which action of the court, plaintiff then and there duly excepted and still excepts.

"Q. (continuing): Could you tell what I said last? (The last statement of Mr. Capron read.) (Continuing): to go and redeem this property for him. He gave me the money.

"Mr. Young: If the court please, I object to that statement.

"The Court: Overruled.

"To which action of the court, plaintiff then and there duly excepted and still excepts.

"Mr. Capron (continuing): I went to the city hall the Monday following, as I remember, Thanksgiving, in 1921, and I had about $50 of Waldron's money to redeem old taxes and was informed that they had requested—that the holder of the certificate requested deed and that they could not give me a redemption certificate; that after

the deed was issued and put on record, I would have to go into court to redeem that, but that the other taxes could be redeemed.

"MR. YOUNG: With whom did you have that conversation?

"MR. CAPRON: Somebody at the counter; I don't know.

"Cross-Examination by Mr. Young.

"Q. You don't know whether a county official or a stranger do you? A. Yes, it was a county official.

"Q. Which county official? A.' I don't know the names of a city official down there.

"Q. In the City Auditor's office or the City Treasurer's office? A. It was a big place in the southeast side of the cage where you pay your taxes, where there is a big open place. I suppose that is the Auditor's office.

"Q. When you first went down to that counter, what did you do? A. I told them that I wanted to—

"Q. (interrupting) : Wait a minute, Mr. Capron. You know what you did when you first walked up to that counter. What happened? A. I told them that I wanted to redeem the taxes on this property.

"Q. Was there anybody there when you walked up there? A. Oh, yes, several people there. They even took me around back.

"Q. (interrupting) : Which one of those several people did you ask? A. I don't know; one of the clerks, one of the officials standing there; I don't know the names of a living man down in the city hall in that office. I didn't even know what Mr. Forbes' name was until he told me on the witness stand here.

"Q. Well, was it Mr. Forbes? A. I don't think so; I don't remember. I think it was a taller man than that I talked to. He was in his shirt sleeves working on the books there.

"MR. YOUNG: If the court please, I want to renew my objection and ask that this evidence all be stricken out for the reason that agency hasn't been proven.

"THE COURT: He is just testifying what he did himself. Overruled.

"To which action and ruling of the court, plaintiff then and there duly excepted and still excepts.

"MR. CAPRON (continuing) : I want further to testify that prior to the filing of this amended answer, I deposited money with the Clerk of the Circuit Court of Jackson County, Missouri, on behalf of Mr. Waldron, to take up any amount due under this tax certificate, tax deed. I believe that is all, but I just want to add to it, all this was done as the agent and attorney for Mr. Waldron.

"Questions by Mr. Young (continued) :

"Q. When do you say this was done? A. He gave me this money either two or three days before Thanksgiving. I remember he called my attention to it, not to spend that money for my Thanks-

giving turkey; he joked me about it, that is the reason I have that in mind.

"Q. I want to ask you if he instructed you to go down and pay off the delinquent taxes on these two lots, the subject of this suit, take up the certificates of redemption, the property had been sold for taxes, did he tell you that? A. He told me to go down—I knew the taxes for 1915, there was a deed issued. He had found that out when we had the abstract brought down; he was putting a mortgage on this property, that is the way we discovered these taxes hadn't been paid. We found a deed for 1915 (taxes) had been issued. I told him he ought to redeem these. Robert could not pay all these back taxes and raised what he could and we was going to redeem one or two years at a time. Then I went down there to redeem the 1916 and they refused to let me have it, saying they had asked for a deed, and as soon as the tax certificate was coming in they would issue a tax deed and that I would have to go in court to set the tax deed aside after it had been put on record. They explained to me very nicely in the Auditor's office—they were very nice to me. Following, answering your question, then it was after that then, some two or three months, that Mr. Clark and I got the Leeds Bank to advance money to take care of all taxes that were due on that property.

"Q. Well, now, was that all you did toward redeeming this property? A. I went down and tried to get it, yes. It was Monday I think following Thanksgiving, 1921.

"Q. Now, you made no further effort to redeem this property except that conversation with that man? A. No, refused to give me a redemption certificate, saying that the holder of the certificate had asked for a deed and as soon as he sent in his certificate they would issue it and then I would have to go into court to get it.

"Q. But you don't know who that man was that told you that? A. Some of the men connected officially with the office there.

"Q. You made no further effort then? A. Not after that.

"Q. To redeem that property at all? A. Not after that I didn't, no.

"Q. You didn't go to the City Treasurer? A. No. I had a talk with the City Treasurer; the Treasurer didn't have anything to do with it after it got delinquent.

"Q. The City Treasurer did not have anything to do with it? A. No, that is my understanding. I went direct to the Auditor's office.

"Q. You made no demand on the City Treasurer at all? A. I did on the Auditor's office.

"Q. I say you made no demand on the City Treasurer at all? A. No, I don't think so. Just went to the Auditor's office.

"Q. That is all."

The witness made no tender to the City Treasurer or other official of the amount due and made no demand on the City Treasurer or other official for a redemption certificate. But it is argued it would have been useless to make the tender for the certificate of redemption would have been refused. We do not find in the testimony of the witness any evidence so indicating. On demand it is the duty of the Auditor to furnish a statement setting forth the amount of money necessary to redeem the land. Upon the filing of such statement with the City Treasurer and the payment to him of said sum, it is his duty to deliver to such person a certificate of redemption. [Section 35, Charter of Kansas City, 1909.] All the witness did was to confer with an official in the Auditor's office who told him the five years had expired and it was too late to redeem the land under the provisions of the charter. In this connection it should be noted that an owner of land sold for taxes has five years from the first day on which the annual tax sale began or at any time before the execution and delivery of the tax deed to the purchaser to redeem the land. [Section 34, Charter of Kansas City, 1909.] The Auditor's office was not asked for a statement of the amount due. We must assume the official would have furnished the statement if he had been asked to do so. We must also assume the City Treasurer would have issued the certificate of redemption if the money due had been tendered. The amount due was not tendered and he was not asked for the certificate. There is no evidence to support the allegation that a tender was made or that if made it would have been refused.

It is admitted the tax deed is regular on its face, and that all the proceedings leading up to the sale of the lots for taxes due in 1916 were regular. The deed vested in appellant an absolute estate in fee simple in said lots. [Section 39, Charter of Kansas City, 1909.] Appellant stands on his tax deed, and there is no proof to sustain the judgment.

It follows the judgment is reversed and the cause remanded with directions to enter judgment for appellant against all the defendants. All concur.