GEORGE P. EBBS and SALLIE A. EBBS, Respondents and Appellants, v. GLENN E. NEFF, Appellant and Respondent.—30 S. W. (2d) 616.

Division One, July 18, 1930.

*M. D. Aber* for plaintiffs.

*W. H. Allen, Prince & Beery* and *Nick M. Bradley* for defendant.

RAGLAND, J.—This is an action to ascertain and determine the title to real estate, under Section 1970, Revised Statutes 1919. It was commenced by George P. and Sallie A. Ebbs, husband and wife, as plaintiffs, against Glenn E. Neff, as defendant. The petition, filed April 13, 1926 (caption omitted), was as follows:

"Plaintiffs are the owners in fee simple of the west half of the southwest quarter of section seven, township forty-five, range twenty-six, except a strip three-tenths of a chain long off the north end and a triangular strip off the south end ten rods wide at west end

and terminating at southeast corner of said 80 acres at a point on the south line, two and a half acres; the east half of the southwest quarter of said section seven and the west half of the west half of the southeast quarter of said section except the one acre tract conveyed by Nathan G. Engel to John Phillips by deed shown at Book 141, page 157, deed records of said county.

"Defendant is in possession thereof, subject to the receivership herein mentioned and claims to have some title, estate or interest in such property.

"Since April 9, 1924, there has been pending in a justice court and in this court on appeal therefrom an action between the parties hereto for the possession of said premises, in which the only controversy has been one of procedure; in the course of said proceeding a receiver was appointed by this court to receive and collect rents therefrom and to hold same subject to the orders of this court, which said action still pends upon the docket of this court, but upon which final judgment has been rendered adverse to plaintiffs' claims as to method of procedure, but not upon the merits of the controversy herein involved.

"That there is now in the hands of said receiver a large sum of money received and had from the rents and profits of said real estate. That the defendant is wholly insolvent, and not responsible to any judgment which might be rendered against him. That the plaintiffs are entitled to all of the said funds in the hands of said receiver, as the rents and products of and from their said land, and that if same pass into the hands of the defendant, they will be wholly lost to plaintiffs and result in their great and irreparable injury.

"That said land is liable to deteriorate and suffer injury if not cared for and looked after, and that it is to the interest of justice that the funds now in the hands of the said receiver acting under the orders of this court as aforesaid be kept and preserved together with such rents as may accumulate during the pendency of this action, and that therefor a receiver be by the court appointed whose further duty it shall be to protect the interests of the parties hereto impartially to the end that the same be preserved and the party ultimately found entitled to same have and keep the same, and to pay taxes thereon, and to keep improvements in condition and preserve and care for said land until rendition of final judgment and execution thereof in this cause.

"Wherefore, plaintiffs pray that the court inquire into the claims of the defendant and that it ascertain and determine the estate, title and interest of the parties severally in and to said real estate; that it adjudge plaintiffs to be the owners thereof and entitled to the possession of same, and decree that defendant has no title nor estate therein and that he be enjoined by decree of this court from pre-

venting or interfering with plaintiffs' possession thereof; that the court appoint a receiver to receive from the present receiver the funds so accumulated and rents to accumulate, and with power and authority to keep, care for and preserve said land, and to make such improvements or repairs thereon as necessary to prevent waste and to preserve the property and to protect the business so entrusted to him pending the termination of this action, subject to the order of this court, and that upon final hearing, the court determine all rights and equities of the parties and to render to the plaintiffs such other and further relief as in equity and good conscience they are entitled to, and that they recover their costs."

The answer on which the cause was tried, filed February 7, 1927, was as follows:

"Leave of court being first duly had and obtained defendant filed this his amended answer, and states that he is the owner of the land described in the petition of the plaintiffs herein: to-wit, the west half of the southwest quarter of section 7 township 45, R26 except a strip three-tenths of a chain long off the north end and a triangular strip off the south end ten rods wide at west end and terminating at the southeaast corner of said 80 acres at a point on south line two and one-half acres; the east half of the southwest quarter of said section seven and the west half of the west half of the southeast quarter of said section, less the one acre tract conveyed by Nathan G. Engel to John Phillips by deed shown at Book 141, page 157, records of said county, that he paid eighteen thousand dollars for the same, eleven thousand dollars cash from his own funds and seven thousand dollars that he borrowed from the plaintiffs herein on the 24th day of March, 1920; that said land was conveyed by the seller direct to the plaintiffs herein to be held by the plaintiffs as security for the said seven thousand dollars. That plaintiffs taking advantage of the fact that they held legal title to said land, have asserted ownership thereof, and their assertion of ownership is based upon no other or better claim than that herein set forth.

"That defendant's indebtedness to the plaintiffs was not evidenced by note as is customary and usual; but by virtue of a writing or loan contract, by which contract defendant was to pay semi-annually the sum of two hundred ten dollars or six per cent interest on said loan, said payments to be made as follows:

"$175 on Aug. 1st, 1920 and $210 on February 1st, 1922, and on the corresponding dates, $210 each six months up to and including February 1st, 1924.

"Defendant had the further right to make payments of one hundred dollars or multiples thereof at any interest-paying date, or could pay off said loan in full at any interest-paying date; that in the event of payments of $100 or multiples thereof on said loan,

future payments of interest upon the balance of said loan should be "reduced pro rata to said payments." Defendant was further obligated to pay all taxes, insurance premiums, expenses of conveyance, etc. That a copy of said loan contract is attached hereto and marked Exhibit 'A.'

"That under the false assumption and claim of ownership plaintiffs have sought to make defendant pay rent on said premises and have had a receiver appointed on said baseless claim, which said wrongful claim has been finally adjudicated against plaintiffs by this court and the action and judgment of this court has been affirmed by the Kansas City Court of Appeals and is reported in 282 S. W. 74.

"That the plaintiffs are not entitled to the relief prayed for in their petition herein, for the reason that all of the matters, facts and things herein contested and contended for by plaintiffs, have been finally and ultimately adjudicated against the plaintiffs by the decision and judgment above set forth.

"That the receiver which plaintiffs aver was appointed in another proceeding between these same parties, was erroneously appointed in view of the final judgment rendered by this court in said proceeding; and also because the order of appointment was made beyond the territorial jurisdiction of the court and defendant's rightful possession was accordingly wrongfully interrupted. That said funds are the property of the defendant and not the property of the plaintiffs.

"Wherefore, defendant prays the court to ascertain the facts herein and order and adjudge that the plaintiffs are not the owners of said land in fee simple, but that the defendant be and is the rightful owner thereof, and defendant further prays judgment for his costs herein incurred and expended."

The reply specifically denied the new matter contained in the answer and reasserted plaintiffs' ownership in fee of the land described in the petition. On the issues so framed the trial court, after hearing the evidence, rendered the following judgment:

"And the court being fully advised in the premises, and having fully considered the pleadings, the evidence and the argument, doth find that defendant is the owner of the west half of the southwest quarter of section seven, township forty-five, range twenty-six, except a strip three-tenths of a chain wide off the north end, and a triangular strip off the south end ten rods wide at the west end and terminating at the southeast corner of said 80-acre tract, containing two and a half acres; the east half of the southwest quarter and the west half of the west half of the southeast quarter of said section seven, township 45, range 26, except one acre conveyed by deed shown at Book 141, page 157, deed records of said county, subject to a mortgage made to the Walton Trust Company by

Herbert Shannon to secure payment of a debt of $5,000 shown at Book 192, page 26, in said deed records, of date January 21, 1919, with interest thereon from February 1, 1923, until February 1, 1924, at the rate of six per cent per annum, and with interest upon the total of said principal and interest at the rate of eight per cent per annum, payable annually from February 1, 1924, until paid, which said debt is now owned by and is the property of the plaintiffs herein; and also subject to an indebtedness of date March 24, 1920, in the sum of seven thousand dollars, with interest thereon at the rate of six per cent per annum from February 1, 1923, with credit thereon of $54, secured by mortgage in the nature of a warranty deed from Herbert Shannon to plaintiffs of date March 24, 1920, shown at Book 207, page 418, in said deed records; and that plaintiffs are entitled to foreclosure of said mortgages and to have the said real estate sold for satisfaction of said liens in their respective orders.

"It is therefore considered, ordered and adjudged by the court that the equity of redemption in said premises be foreclosed, and that the said lands be sold at public vendue to the highest bidder for cash at the place of making sales of lands in Johnson County under executions, and that the Sheriff of Johnson County be appointed special commissioner to sell said land, and out of the proceeds after paying the costs of said sale, the said sheriff pay first the amount then due upon said debt of $5,000 so secured by the mortgage shown at Book 192, page 26, of said deed records; and next whatever may be due upon the said $7,000 debt of date March 24, 1920, with interest thereon from February 1, 1923, to date of such sale, credited by the sum of $54, and that the sheriff make report of his proceedings hereunder to the next term of this court. It is further considered and adjudged by the court that the receiver heretofore appointed in this cause be and he is discharged and he is directed to turn over all moneys in his hands to the defendant herein. And it is further considered and adjudged by the court that plaintiffs have judgment against the defendant for the costs herein incurred, and that plaintiffs have therefor execution."

There is but little dispute as to the facts: their interpretation gives rise to the controversy. In the year 1920, one Shannon was the owner of the land in question, a 200-acre farm in Johnson County, subject to a deed of trust given to secure to the Walton Trust Company an indebtedness of $5,000. In February of that year defendant contracted with Shannon to purchase the land, subject to the $5,000 incumbrance, for $18,000 in cash. To make this cash payment defendant found it necessary to borrow $7,000. He accordingly applied to plaintiffs for a loan of that sum. After some negotiations it was arranged that Shannon should convey the land by warranty deed to plaintiffs and that a written contract,

in form a lease with an option to buy, should be entered into between the plaintiffs, purporting to be the lessors, and the defendant, purporting to be the lessee. On March 24, 1920, this arrangement was duly consummated.

According to the terms of the written agreement: plaintiffs leased the land to defendant for a term of four years; he was required to pay semi-annually, "as rent," the sum of $210, the exact equivalent of interest on $7,000 at six per cent, and in addition thereto the interest on the prior incumbrance and all taxes, as and when they became due; if defendant at any "rental-paying date" paid plaintiffs the full sum of $7,000, they were obliged to deed the land to him; and he had the privilege of paying portions of said sum "at rental-paying dates," "such payment to be $100 or multiples thereof, in which event future payments of rental shall (should) be reduced pro rata to such payment."

In February, 1923, defendant defaulted in the payment of "rent" and plaintiffs brought a suit before a justice of the peace to recover the arrearage of "rent" and for possession of the land. From a judgment in favor of plaintiffs defendant appealed to the circuit court; in the latter court defendant prevailed and the judgment was affirmed by the Kansas City Court of Appeals in Ebbs v. Neff, 282 S. W. 74. The written contract herein referred to and the facts and circumstances leading up to its execution are fully set forth in the opinion in that case.

Shortly after the filing of the petition in this case, a special judge, elected by the Bar in the absence of the regular judge, on plaintiffs' application, appointed a receiver, "to collect rents and hold the same subject to the order of the court." It does not appear that defendant's possession was in any way disturbed, and the record is entirely silent as to whether any rents were paid or received during the receivership.

At the return term the regular judge disqualified, and Honorable R. M. Reynolds, Judge of the 15th Circuit, by agreement of the parties was called and presided at the trial of the cause.

From the judgment, which has been set out in full, both parties appealed; their several appeals were consolidated in this court and heard as one cause.

Plaintiff-appellants' assignments of error are as follows:

"1. The transaction in question did not constitute a mortgage and the court erred in so holding. This assignment of error is made solely on behalf of the integrity of the law . . . As to the case at bar, plaintiffs are indifferent since the land is worth so much less than the money plaintiffs have in it, that they face a heavy loss on either theory.

"2. The court erred in discharging the receiver and in directing him to turn over funds in his hands to defendant."

Defendant-appellant's principal assignment is:

"The court erred in granting relief beyond the scope of the pleadings."

I. Before any of the assignments of error is considered, it should be determined whether this is an action at law, or a suit in equity. It must be the one or the other: it cannot have the attributes of both. In that respect actions under Section 1970 do not differ from other civil actions; and it is just as essential in those actions as in others that the distinction as to being legal or equitable be maintained. Such distinction involves the constitutional right of trial by jury in the court of first instance, and as a consequence determines the method of review which must be employed by the appellate court on appeal.

Whether this is an action at law, or a suit in equity, *must be determined from the pleadings.* [Jacobs v. Waldron, 317 Mo. 1133, 298 S. W. 773; Koehler v. Rowland, 275 Mo. 573, 205 S. W. 217; Minor v. Burton, 228 Mo. 558, 128 S. W. 964; Lee v. Conran, 213 Mo. 404, 111 S. W. 1151.]

"It has been settled by this court that the character of an action brought under Section 2535 (now 1970, R. S. 1919) is determined by the issues which the pleadings raise. . . . If the pleadings present issues of equitable cognizance, then it becomes a proceeding in equity. But a straight action under this statute, in the terms of the statute, is a suit at law. . . . Where the petition states an action at law, if the answer sets up an equitable defense and asks affirmative relief, it converts the suit at once into a suit in equity, so that the rules of equity apply. But the setting up of an equitable defense does not convert the cause into a proceeding in equity unless affirmative relief be prayed." [Koehler v. Rowland, supra, l. c. 581.]

"It isn't sufficient to plead an equitable defense, but there must be a prayer for affirmative relief, based on such defense before the action is converted into one in equity." [Jacobs v. Waldron, supra, l. c. 1137.]

The petition in this case, after all portions of it relating to the appointment of a receiver are eliminated, alleges merely that plaintiffs are the owners in fee simple of the land, and that defendant is in the possession thereof and claims to have some title, estate or interest in such property; it then prays the court to ascertain and determine the title, estate and interests of the parties severally in and to said real estate. The pleading after such elimination therefore states in the terms of the statute an action at law. And the character of the cause of action so pleaded is not changed by the allegations and prayer as to a receivership. The receivership

is purely ancillary to the main proceeding in which an adjudication of title is sought. [23 R. C. L. 11.]

The answer avers that the defendant "is the owner of the land described in the petition;" it then sets forth a state of facts from which the conclusion can be drawn that defendant is in fact the owner of the beneficial interest in the land, that plaintiffs merely hold the legal title, and that as security for an indebtedness owing by him to them. In the prayer the defendant merely asks that on the facts pleaded he be adjudged to be the "rightful owner" of the land. It will be noted that he nowhere in his pleading attempts to specify with technical accuracy the title he claims: on the contrary he seems to have studiously avoided doing so. We assume that he is claiming the equitable title only. For while it is true that mortgages, regardless of the form they take, are considered for most purposes as creating mere liens to secure the payment of debt, and are so treated in actions at law as well as in proceedings in equity, the facts pleaded in the answer present a somewhat unusual situation. The defendant did not convey the legal title to the plaintiffs: he never had any such title to convey: the conveyance to plaintiffs was made by a third party. The two written instruments, the deed and the lease, which defendant insists should be read together and as so read to constitute a mortgage, do not create or establish title in him. His title, if any, arises from the facts and circumstances leading up to and attendant upon the execution of the two instruments and is therefore necessarily an equitable one. Defendant was not content to plead such equitable title as a defense merely to plaintiffs' cause of action: he asked the court by its judgment to declare and establish it. In other words, he asked to have a trust in his favor decreed. In doing so he asked affirmative relief. This proceeding must therefore be regarded as one in equity.

II. 1. Plaintiff-appellants' first assignment is made solely in the interest of the integrity of our jurisprudence, so it recites, and consequently is not pressed with a great deal of vigor. A brief consideration of it from the standpoint of the record, however, will aid in the solution of some of the other questions presented.

It is contended under this head that the written instrument, purporting to be a lease with an option to buy, evidenced a conditional sale and not a mortgage. The criterion of a mortgage is set forth by Ruling Case Law, with its usual perspicuity, thus:

"It may be accepted as axiomatic that a conveyance cannot be a mortgage unless given to secure the performance of an obligation. Conversely, if intended to secure an obligation, it will be con-

strued in equity as a mortgage and nothing else. It follows that the form or letter of an instrument of conveyance is not conclusive in its character when the question is raised whether it is enforceable as a mortgage. On the contrary, its purpose is the decisive factor; and if that be security, then the instrument, irrespective of its form, must be construed to be a mortgage. The question is one of intention to be decided from a consideration of the whole transaction and not from any particular feature of it." [19 R. C. L. sec. 7, pp. 244-5.]

In this case the warranty deed delivered to plaintiffs by Shannon at defendant's direction and the written contract executed by plaintiffs and defendant were parts of one and the same transaction. According to their purport plaintiffs acquired the title in fee simple to the land in question and defendant obtained a lease for a term of four years. But on the issues raised the construction of the deed and contract as written instruments is of small importance: the dominant factor is whether they were intended, contrary to their import, to secure the payment of a loan of $7,000. This controlling fact the trial court found on clear and convincing evidence. [See Ebbs v. Neff, supra.] In that finding we concur.

2. As already pointed out, the ownership of the land described in the petition was the only matter in issue under the pleadings. The right to the rents collected by the receiver, if any, was incident to such ownership. The trial court having found that the defendant owns the land, the order directing the receiver to pay the rents to him is the only one that it could have properly made. If this had been an action to foreclose the equitable mortgage, a different situation would have been presented.

III. 1. Plaintiffs in their petition alleged that they were the absolute owners in fee simple of the land therein described and prayed the court to so find and adjudge; the defendant in his answer averred in substance that he had the equitable title to the land, subject to an equitable mortgage, and that he asked the court to adjudge and declare. On this state of the pleadings the court adjudged that defendant was the owner of the land subject to an equitable mortgage, and it also decreed foreclosure of the mortgage. Defendant-appellant insists that the judgment in respect to the latter feature was beyond the scope of the pleadings. But was it? The defendant by his pleading asked the court to adjudge that the plaintiffs held in trust for his use and benefit the title to the 200 acres of land which had been conveyed to them by Shannon, contrary to their claim of absolute title which comported with the express terms of the deed of conveyance.

In that connection he averred that they held the title merely as security for his debt; yet he did not pay the debt or offer to pay it although it was long past due. Without making payment, or tendering payment, he was not entitled to the relief he asked. The decree merely compels him to do equity as the price of the relief granted. For a discussion of the applicable principles see Stark v. Cooper, 203 Mo. App. 238, 245-247.

2. Some evidence, to the effect that plaintiff, George P. Ebbs, said that he had the contract "fixed that way" so that he would not have to pay taxes on the $7,000, found its way into the record, but was wholly disregarded by the trial court. On the basis of this evidence the defendant-appellant contends that the contract is illegal and void. Such contention, however, is inconsistent with the position taken by defendant in his answer wherein he set up the contract as definitive in part of his title. For that reason it cannot be considered. The judgment of the circuit court is in all things affirmed. All concur, except *Gantt, J.,* absent.